UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

UNITED STATES OF AMERICA

-against-

SHERMAN BARRO,

Defendant.

-----------------------------------------------------------------X

**MEMORANDUM & ORDER**

**12-CR-0160 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Pending before the court is Defendant Sherman Barro's motion to dismiss the indictment—with prejudice—for a violation of the Speedy Trial Act. (See Def. Mot. (Dkt. 54).) The Government concedes that a violation of the Speedy Trial Act has occurred, but argues that the dismissal should be without prejudice to allow the Government to re-file the charges against Defendant. (See Gov't Mem. in Opp'n (Dkt. 56).) The only question before the court, therefore, is whether the court should dismiss the indictment with or without prejudice.

## I. CHARGED CRIMINAL CONDUCT

On January 31, 2012, Defendant Sherman Barro, a citizen of Jamaica and a legal permanent resident of the United States, arrived at John F. Kennedy International Airport in Queens, New York, aboard Caribbean Airlines flight #15 from Kingston, Jamaica. (Compl. ¶ 1 (Dkt. 1).) Defendant was traveling with his wife and his infant son. Defendant was selected for a Customs and Border Protection ("CBP") examination, during which he presented three bags for inspection. (Id. ¶ 2.) Defendant was questioned about his travel and allegedly admitted that all three bags and their contents belonged to him. (Id.) During the following routine inspection of his luggage, the CBP officer allegedly noticed that two of the three bags had unusually thick

bottoms. (Id.) The CBP officer probed the bottoms of both bags, allegedly revealing a white powdery substance that field-tested positive for the presence of cocaine. (Id.) Defendant then was placed under arrest. The Government alleges that further analysis later revealed that the total net weight of the cocaine seized from Defendant's luggage is 4,198 grams. (See Gov't Mem. in Opp'n at 2.)

## II. PROCEDURAL HISTORY

On February 29, 2012, a grand jury returned an indictment charging Defendant with cocaine importation and possession of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 952(a), 960(a)(1), 960(b)(2)(B)(ii), 841(a)(1), and 841(b)(1)(B)(ii)(II). (Dkt. 6.) On March 9, 2012, Defendant was arraigned on the indictment and pleaded not guilty. (Dkt. 8.) On April 6, 2012, Defendant made a bail application and was released on an unsecured bond of $100,000. (Dkt. 11.) He has remained free on bond since that date.

On December 4, 2012, Defendant filed a motion to suppress his post-arrest statement. (Dkt. 19.) On January 16, 2013, the court referred the fully briefed motion to Magistrate Judge Lois Bloom for an evidentiary hearing and set a trial date of April 4, 2013. (Dkt. 26.) Judge Bloom conducted an evidentiary hearing on February 13, 2013. At the end of the suppression hearing, Judge Bloom invited post-hearing briefing and set a briefing schedule. (See Feb. 13, 2013, Min. Entry.) Defendant twice sought and obtained extensions of time to file his brief. (Dkts. 34, 36.) By March 7, 2013, post-hearing briefing on the suppression motion had been completed. (Dkt. 38.) Time continued to be excluded based on the pending suppression motion because Judge Bloom had not yet issued a report and recommendation ("R&R"), and the court had not determined whether to accept the R&R. (Dkt. 44.)

On March 22, 2013, Judge Bloom issued an R&R in which she recommended suppression of Defendant's post-arrest statement. (Dkt. 43.) This court held a status conference on March 25, 2013, at which the Government indicated it would be filing objections to the R&R. (Dkt. 47.) The court set a briefing schedule for objections to the R&R and excluded time, on the basis of motion practice, until May 3, 2013, the date of the motion hearing. The Government filed its objections to the R&R on April 5, 2013 (Dkt. 46.), and defense counsel filed a response on April 23, 2013 (Dkt. 48.) The court thereafter adjourned the motion hearing from May 3, 2013 until June 19, 2013, due to the court's unavailability. (Dkt. 50.) On June 19, 2013, the court held oral argument on the Government's objections to the R&R and reserved decision. (Id.)

On July 29, 2013, the court issued an opinion sustaining the Government's objections to the R&R and denying Defendant's motion to suppress his post-arrest statement.[1] (Dkt. 52.) The court did not set a new status conference date, and neither counsel for Defendant nor the Government requested one. As discussed below, time was not excluded from July 29, 2013 until the next status conference on February 26, 2014.

Shortly after the court's decision, on August 12, 2013, the Attorney General issued a memorandum to United States Attorneys concerning the changed Department Policy on Charging Mandatory Minimum Sentences and Recidivist Enhancements in Certain Drug Cases (the "Holder Memo"). As a result of the Holder Memo, the United States Attorney's Office for the Eastern District of New York adopted a revised "bump-down" policy whereby certain drug couriers were made eligible for an additional 4-point reduction in their applicable range under the United States Sentencing Guidelines ("Guidelines"). In addition, the former policy of the U.S. Attorney's Office, which provided that a drug courier defendant who made pretrial motions

[1] Although signed on July 29, 2013, the court's Order was not posted on ECF until August 2, 2013. (Dkt. 52.)

was no longer eligible for the bump-down, was revised so that a defendant who made such motions prior to the issuance of the Holder Memo could receive the benefit of the Holder Memo. The Government represents that it communicated these changes defense counsel in mid-to-late August 2013, who indicated that he would speak to his client and would get back to the Government concerning whether Defendant wished to plead guilty or go to trial. (Gov't Mem. in Opp'n at 3.) According to the Government, defense counsel never indicated which avenue Defendant wished to take. (Id.)

On February 21, 2014, the court set a status conference date of February 26, 2014. The Government represents that during the weekend of February 22-23, 2014, counsel for the Government realized that the speedy trial clock had run and informed counsel for Defendant of this fact. (Id.) Counsel for the Government also informed the court of the speedy trial violation during the status conference on February 26, 2014. (Feb. 26, 2014, Hr'g Tr. (Dkt. 56-2) at 2-3.)

At the status conference, defense counsel indicated that Defendant would be requesting a more favorable plea agreement due to the speedy trial violation. (Id. at 3.) Specifically, defense counsel sought a plea agreement under which Defendant could plead to a non-aggravated felony offense that would not require his automatic deportation from the United States upon conviction. (Def. Mot. at 2 n.1.) After conferring internally, Government counsel informed defense counsel that it would not offer such a plea to Defendant. (Gov't Mem. in Opp'n at 3.) Instead, the Government offered Defendant a bump-down plea agreement that included a 4-point reduction consistent with the Holder Memo. (Id.) The offer was to expire on March 27, 2014. (Def. Mot. at 2 n.1.) On April 7, 2014, Defendant filed the instant motion, arguing that his statutory speedy trial rights had been violated.

## III. THE PARTIES' CONTENTIONS

Defendant argues that the indictment must be dismissed since time was not excluded from July 29, 2013, until the next status conference held on February 26, 2014. (Def. Mot. at 1.) Further, Defendant argues that the dismissal must be with prejudice. (Id. at 3-4.) Defendant does not argue that his constitutional right to a speedy trial was violated.

The Government concedes that a violation of the Speedy Trial Act has occurred (Gov't Mem. in Opp'n at 4), but argues that the dismissal should be without prejudice to allow the Government to re-file the charges against Defendant (id. at 6).

## IV. ANALYSIS

### a. Speedy Trial Violation

The Speedy Trial Act provides that

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1). The 70-day period can be extended by certain "periods of delay" that are specifically excluded from the computation of time within which the trial must commence. Id. § 3161(h). Automatically excluded from the 70-day period, among other time periods, are (1) "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion," id. § 3161(h)(1)(D), and (2) "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court," id. § 3161(h)(1)(H). Also excluded from the calculation of the 70-day time period is any delay authorized by the court

upon a specific finding that such a delay would serve the interests of justice. Id. § 3161(h)(7). Failure to bring a defendant to trial by the Act's 70-day deadline entitles the defendant to dismissal of the charges. Id. § 3162(a)(2).

Defendant argues that the 70-day speedy trial period in this case commenced on March 10, 2012, the day after he was arraigned on the indictment and pleaded not guilty. (See Def. Mot. at 2 (citing United States v. Nixon, 779 F.2d 126, 130 (2d Cir. 1985) (statutory period begins "only after an appearance at which a not guilty plea has been entered")).) According to Defendant, a series of exclusions of time on consent for plea negotiations and other reasons resulted in exclusion of time until December 21, 2012. Thereafter, time was excluded for the purpose of the pretrial motion to suppress until April 23, 2013, the date of Defendant's response brief in opposition to the Government's objections to the R&R. (Id. (citing Henderson v. United States, 476 U.S. 321, 331 (1986) (holding that 18 U.S.C. § 3161(h)(1)(D) "excludes time after a hearing has been held where a district court awaits additional filings from the parties that are needed for proper disposition of the motion").)

Defendant is not clear how he would characterize the time between the April 23, 2013 response brief in opposition to the Government's objections to the R&R and this court's Order sustaining the Government's objections to the R&R, which was issued on July 29, 2013, and posted on ECF on August 2, 2013. Regardless, Defendant insists that because there was no excludable time from August 2, 2013, until the status conference on February 26, 2014, the 70-day period had clearly run. (Id.)

The Government's calculation is rather different, although the outcome is the same. The Government maintains that time was excluded from the speedy trial clock in the interests of justice based on ongoing plea negations and Defendant's pretrial motion to suppress his post-

arrest statements between April 24, 2012 and June 19, 2013, the date of oral argument on the Government's objections to the R&R. (Gov't Mem. in Opp'n at 2 (citing Dkt. 13-20, 47).) According to the Government, following the oral argument, 30 days were automatically excluded while the motion to suppress was being considered by the court, ending on July 19, 2013. See 18 U.S.C. § 3161(h)(1)(H). Because time was not excluded from the speedy trial clock from July 19, 2013 forward, the Government concedes that a violation of the Speedy Trial Act has occurred. (Gov't Mem. in Opp'n at 4.)

Although there are some differences in how the parties calculate the dates of the start of the speedy trial clock and the violation, these differences are immaterial because the parties are in agreement that the Speedy Trial Act was violated. (See May 14, 2014, Min. Entry.) As a result, the only remaining dispute concerns the proper remedy for this violation.

**b. Remedy for Violation of Speedy Trial Act**

The Speedy Trial Act governs the remedy for the government's failure to bring a defendant to trial within the appropriate period. "If a defendant is not brought to trial within the time limit required by section 3161(c) [70 days] as extended by section 3161(h) [periods of excludable delay], the information or indictment *shall be dismissed* on motion of the defendant." 18 U.S.C. § 3162(a)(2) (emphasis added). Such dismissal may be with or without prejudice. See id.; see also Zedner v. United States, 547 U.S. 489, 499 (2006) ("[I]f a meritorious and timely motion to dismiss is filed, the district court must dismiss the charges, though it may choose whether to dismiss with or without prejudice"). The statute leaves the decision whether to dismiss with or without prejudice to the discretion of the district court. United States v. Taylor, 487 U.S. 326, 335 (1988); United States v. Caparella, 716 F.2d 976, 980 (2d Cir. 1983).

In determining whether to dismiss the indictment with or without prejudice, a district court is *required* to consider "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of [the Speedy Trial Act] and on the administration of justice." 18 U.S.C. § 3162(a)(2). In addition to these three factors specified in the statute, the Supreme Court has held that the district court should also consider whether there was any prejudice to the defendant as a result of the delay. See Taylor, 487 U.S. at 332-34.

i. The Seriousness of the Charges

Defendant argues that while importation of a controlled substance is no trivial offense, "[he] is charged only with being a low-level offender whose involvement was limited to smuggling and did not use violence or weapons in connection with the drug offense." (Def. Mot. at 3.) Defendant cites recent statements by the Department of Justice which trumpet its modified charging policies and related initiatives to alter the Government's approach to dealing with nonviolent drug offenders, such as Defendant. (Id. (citing Press Release, Department of Justice, Attorney General Holder Urges Changes in Federal Sentencing Guidelines to Reserve Harshest Penalties for Most Serious Drug Traffickers (Mar. 13, 2014)).) Defendant relies principally on Caparella, a case which involved non-violent mail theft. See 716 F.2d at 981. Defendant adds that even if the court considers his crime to be "serious," dismissal with prejudice is not without precedent. (Id. (citing United States v. Upton, 921 F. Supp. 100, 105 (E.D.N.Y. 1995), aff'd sub nom. United States v. Dragone, 78 F.3d 65 (2d Cir. 1996) (per curiam)).)

The Government responds that the drug charges in this case are quite serious. The Government emphasizes that both drug charges are Class B felonies punishable by a minimum of 5 years and a maximum of 40 years in prison. (Gov't Mem. in Opp'n at 6.) After the Holder

Memo, Defendant would only be charged with a lesser included offense of 21 U.S.C. § 952(a), a Class C felony punishable by up to 20 years in prison. (Id. at 7.) The Government estimates that the range of imprisonment under the Guidelines is 70 to 87 months, based on a total offense level of 26 and a criminal history category of II, without any credit for acceptance of responsibility. (Id.) Based on recent proposed amendments to the Guidelines, Defendant's total offense level would be reduced by two points to level 24, which corresponds to a range of imprisonment of 51-63 months. (Id.) At oral argument on the instant motion to dismiss, counsel for Defendant did not contest these sentencing estimates. (See May 14, 2014, Min. Entry.)

The court concludes that the charges in this case should be classified as "serious" within the meaning of the statute. See Taylor, 487 U.S. at 338 (narcotics charges involving 400 grams of cocaine "serious"); United States v. Simmons, 786 F.2d 479, 485 (2d Cir. 1986) (possession of six glassine envelopes containing heroin with intent to distribute, for which the district court imposed a sentence of five years custody, was "serious"); United States v. Rodriguez, 617 F. Supp. 788, 791 (E.D.N.Y. 1985) (charges pertaining to distribution and possession of cocaine with intent to distribute "serious"). Defendant is correct that norms about culpability of low-level non-violent drug offenders have certainly evolved since the 1980s, when the above decisions issued. There has been a movement both on the charging side and the sentencing side to reduce the punishment of such offenders. However, even taking these policy changes into account, Defendant likely faces between over four and over five years imprisonment, which is far from insignificant. The charges are serious and cut in favor of dismissal without prejudice.

ii. The Facts and Circumstances of the Violation

Next, Defendant argues that the facts and circumstances that led to the speedy trial violation demonstrate a negligent attitude by the prosecution because the violation "could likely

have been avoided by the prosecution's taking measures to procuring [sic] an ends of justice exclusion." (Def. Mot. at 3.) According to Defendant, the prosecution's failure to do so militates in favor of dismissing with prejudice, rather than affording the Government another opportunity to reprosecute him. (Id.)

The Government responds that the Defendant's argument is circular, since the only circumstance it raises is the prosecution's failure to request an exclusion. (Gov't Mem. in Opp'n at 9.) That, however, constitutes the violation itself, and does not make out a culpable circumstance that would merit a dismissal with prejudice. The Government notes that Defendant does not argue that the prosecution acted in bad faith or under a pattern of neglect or serious misconduct. By contrast, the Government emphasizes its adherence to court-mandated deadlines in this case. (Id. at 10.) The Government characterizes the violation as an "isolated, unwitting" and "inadvertent" error, which does not support dismissal with prejudice. (Id. at 9.)

In Taylor, the Supreme Court observed that dismissals with prejudice would be warranted upon a showing of "truly neglectful attitude," "bad faith," a "pattern of neglect," or other serious misconduct, see Taylor, 487 U.S. at 338-39. The Second Circuit has also stated that "the court may properly take into account a demonstrably lackadaisical attitude on the part of the government attorney in charge of the case or a pattern of dilatory practices on the part of the United States Attorney's office in the district in question." United States v. Giambrone, 920 F.2d 176, 180 (2d Cir. 1990) (citing Taylor, 487 U.S. at 338-39). "[I]n the absence of a factually supported finding of bad faith or a pattern of neglect by the local United States Attorney, an 'isolated unwitting violation' of the Speedy Trial Act cannot support a decision to dismiss with prejudice." United States v. Hernandez, 863 F.2d 239, 244 (2d Cir. 1988). A defendant's

culpable conduct is also relevant to the consideration of the "facts and circumstances" of the violation. See Taylor, 487 U.S. at 340.

Here, as the Government correctly points out, Defendant does not argue that the prosecution acted in bad faith, point to any pattern of neglect by the United States Attorney's Office, or identify any misconduct by the prosecutor in this case. Defendant has failed to come forward with any evidence that the violation was due to anything other than the Government counsel's negligent failure to request a speedy trial exclusion in the interests of justice on July 19, 2013, after the fully-briefed motion to suppress had been taken under advisement by the district court for 30 days, or after August 2, 2013, at which point the court had issued a decision on the motion. At oral argument on the instant motion to dismiss, defense counsel conceded that the Government's conduct was "at worst neglect." (See May 14, 2014, Min. Entry.) The court agrees that the Government has generally adhered to the briefing schedules set by the court and the magistrate judge and vigorously litigated the suppression motion. On these facts, the circumstances of the violation weigh in favor of dismissing without prejudice.

      iii. The Impact of Reprosecution on the Speedy Trial Act and the Interests of Justice

Defendant argues that the Second Circuit views "a violation of any of the Act's time limitations as negatively impacting on the administration of the act." (Def. Mot. at 3 (citing Caparella, 716 F.2d at 981).) The Government responds that given the circumstances of the violation discussed in the preceding section, reprosecution is consistent with the goals of the Speedy Trial Act. (Gov't Mem. in Opp'n at 11-12.) In effect, the Government argues that dismissal without prejudice is an adequate remedy for what is effectively only an isolated, negligent violation of the statute. (Id.) The Government notes that dismissal without prejudice would force the Government to obtain a new indictment, if it decides to reprosecute, exposing

the prosecution to dismissal on statute of limitations grounds. (Id. (citing Taylor, 487 U.S. at 342).)

The remedy provisions of the Speedy Trial Act are designed to promote compliance with the Act's provisions without needlessly subverting important criminal prosecutions. Indeed, the Supreme Court has stated that a dismissal without prejudice is "not a toothless sanction." Taylor, 487 U.S. at 342. "The less severe sanction (dismissal without prejudice) lets the court avoid unduly impairing the enforcement of federal criminal laws—though even this sanction imposes some costs on the prosecution and the court, which further encourages compliance." Zedner, 547 U.S. at 499. In this case, even defense counsel concedes that the error in requesting an exclusion of time in the interests of justice appears to be an isolated act of negligence by the prosecution. Therefore, dismissing the case without prejudice should serve as a sufficient sanction against the Government's violation the Speedy Trial Act.

As for the impact of reprosecution on the administration of justice, Defendant simply quotes the Second Circuit for the proposition that "a speedy trial is not only viewed as necessary to preserve the rights of defendants," but "[j]ust as significant is the protection it accords to society's interest in bringing criminals to justice promptly." (Def. Mot. at 3 (citing Caparella, 716 F.2d at 981).) The Government responds that greater harm would come from a dismissal with prejudice because Defendant would not have to face the consequences of his actions in a court of law. (Gov't Mem. in Opp'n at 12-13.) Dismissing the indictment without prejudice, on the other hand, ensures compliance with the demands of the Speedy Trial Act and with the societal demand that those accused of serious crimes be dealt with according to law. (Id.) In this case, the court agrees that an inability to bring Defendant to trial on serious drug charges because

of an isolated, negligent violation by the prosecution would negatively impact the administration of justice. This factor also cuts in favor of dismissal without prejudice.

iv. Prejudice to Defendant

Finally, Defendant argues that he has suffered prejudice from having been indicted but untried for over two years, over five months of which has been non-excludable time. (Def. Mot. at 4.) Defendant maintains that during this time the mere fact of indictment has resulted in a six-month jail sentence for violating probation (for an unrelated reckless driving misdemeanor conviction), as well as "immeasurable anxiety" in having the federal criminal charges and the risk of being deported to Jamaica hanging over him. (Id.)

The Government responds that contrary to his representations, Defendant is in no hurry to have this case tried. The Government cites Defendant's assent to excluding time for plea negotiations even *after* the speedy trial violation was brought to light, as well as Defendant's admission that time would have very likely been excluded had the Government sought an ends of justice exclusion in August 2013. (Gov't Mem. in Opp'n at 13.) The Government adds that Defendant has been free on bond since April 2012, which has allowed him to work and spend time with family, including having a second child with his wife. (Id.) The Government argues that the delay has not drained Defendant's resources since he is represented by the Federal Defenders. (Id.) Finally, the Government rebuts Defendant's claim that the speedy trial violation is responsible for his intervening six-month incarceration. The Government submits that the probation violation that led to Defendant having to serve jail time was the fact that he left the United States. (Gov't Mem. in Opp'n at 14 (citing Nov. 9, 2012, Hr'g Tr. (Dkt. 56-1) at 6-7 ("They made him plead to a technical violation for having left the country and he was sentenced to six months.").)

Prejudice is not generalized harm to a defendant as a result of the speedy trial violation, but rather the effect of that delay on the defendant's trial preparation. United States v. McCrudden, 222 F. Supp. 2d 352, 356 (E.D.N.Y. 2002). Courts note that the length of delay is a closely related consideration because "[t]he longer the delay, the greater the presumptive or actual prejudice." Taylor, 487 U.S. at 340. The delay "may seriously interfere with the defendant's liberty, whether he is free on bail or not, and . . . may disrupt his employment, drain his resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends." Id. (internal quotation marks omitted).

In this case, non-excludable delay lasted approximately five months. This is certainly more than trifle, see United States v. Siembida, No. 05-CR-366 (PKC), 2007 WL 4267192 (S.D.N.Y. Dec. 3, 2007) (a non-excludable delay of ten days not significant), but not a serious delay in the order of years, see United States v. Stayton, 791 F.2d 17, 22 (2d Cir. 1986) (a non-excludable delay of twenty-three months weighed significantly in favor of dismissal with prejudice); United States v. Mancuso, 302 F. Supp. 2d 23 (E.D.N.Y. 2004) (a non-excludable delay of three years weighed significantly in favor of dismissal with prejudice). Therefore, the delay in this case does not trigger a presumption of prejudice.

Furthermore, the delay in this case does not appear to have actually prejudiced Defendant's ability to mount his defense in this drug importation case. Defendant does not claim that his ability to defend himself against the indictment was compromised as a result of the five-month delay. For example, he does not argue that he lost the availability of witnesses or evidence. Although one does not doubt the real anxiety of having the federal criminal charges and the risk of being deported to Jamaica hanging over Defendant, this is hardly attributable to the additional delay. On the contrary, even after the violation of the Speedy Trial Act became

evident, Defendant requested additional exclusion of time while he negotiated a more favorable plea agreement with the Government. These actions demonstrate a desire to take as much time as was necessary to arrange a plea agreement. In sum, any harm Defendant may have suffered from the speedy trial violation did not noticeably harm his trial preparation. Therefore, this factor also cuts in favor of dismissal without prejudice.

## IV. CONCLUSION

For the foregoing reasons, the indictment is DISMISSED WITHOUT PREJUDICE.

SO ORDERED.

s/Nicholas G. Garaufis

NICHOLAS G. GARAUFIS
United States District Judge

Dated: Brooklyn, New York
May 15, 2014